## CLARK v. HOLLAND ET AL.

1. **Mortgage:** ON EQUITABLE INTEREST: SUBSEQUENT PURCHASER: NOTICE. B. had sold land to H., but if any deed had been made therefor it was not of record. H. mortgaged the land back to B., and the mortgage was duly recorded. B. died, and the legal title of his lands descended to his widow and two sons, from whom P. procured a conveyance of the land in question. Before P. purchased he knew of the record of the mortgage, and heard it read, at least in part. *Held* that P.'s knowledge of the mortgage running from H. to B., from whose heirs he was about to purchase the legal title, was sufficient to suggest to him that B. must have sold the land to H., and to charge him with notice of all the facts in the case which he would have learned by inquiry, and that the mortgage was a lien on the land in his hands.

2. **Trusts:** PURCHASE BY TRUSTEE OF TRUST PROPERTY: FACTS NOT CONSTITUTING. Where the pledgee of a note and mortgage has deposited them in bank, where they are seized by the sheriff as the property of the pledgeor and exposed to sale on execution, the pledgee may purchase them, like any other person, and he will not be regarded as a trustee purchasing at his own sale.

*Appeal from Boone Circuit Court.*

THURSDAY, JUNE 16.

ACTION to foreclose a mortgage. Judgment and decree were rendered against the defendant Holland, but not against the defendant Phelps. The plaintiff appeals.

*Boal & Jackson* and *Geo. W. Crooks,* for appellant.

No appearance for appellees.

ADAMS, CH. J.—The mortgage in question was executed by the defendant Holland to one N. B. Brown, to secure a promissory note executed by Holland to Brown, 1. MORTGAGE: on equitable and made payable to order. The note was sold interest: sub-sequent pur-chaser: no-tice. upon an execution against Brown, and purchased by the plaintiff. The land upon which the mortgage was executed did not stand in Holland's name, and it seems probable that he never had the legal title. The defendant Phelps claims that he did not, and, for the pur-

poses of the opinion, it may be conceded that he did not. Phelps found the legal title belonging apparently to Susan Brown, N. E. Brown and H. T. Brown, and from them he obtained a deed paying a valuable consideration therefor.

It seems to be conceded that the land belonged originally to N. B. Brown. He died, and the legal title, we infer, passed to his widow, Susan Brown, and his sons, N. E. and H. T. Brown, who are the defendant Phelps' grantors. At the time the mortgage was executed, N. B. Brown held the legal title, and we have a case where the mortgagor appears, so far as the record shows, to have attempted to mortgage land which not only did not belong to him, but which belonged to the mortgagee. The real fact appears to be that Brown sold the land to Holland, but for some reason omitted to make a deed. Notwithstanding such omission, however, he took a mortgage upon the land from Holland, which is the mortgage in question. Holland, then, at the time he executed the mortgage, was the equitable owner, and the mortgage had the effect to bind his interest, as against all persons who had actual knowledge of such interest, or knowledge of facts which were sufficient to put them upon inquiry.

The evidence shows that before Phelps purchased he discovered, in some way, the record of the mortgage, and heard it read, at least in part. The fact of the record known to Phelps was sufficient to lead to the inference that a mortgage had been executed, and we think that the case is not different from what it would have been if Phelps had seen the mortgage in the hands of the holder. *St. John v. Conger,* 40 Ill., 535.

It is true that even then the mortgage would not appear to be a lien upon the property, because Holland did not appear to have title. But the existence of the mortgage was a significant fact, and especially as it ran to the very person who appeared to be the owner of the land at the time it was made, and from whose heirs Phelps proceeded at once to obtain a deed. The inference, we think, would necessarily

arise, in any person's mind possessed of ordinary intelligence, that Brown had sold the land to Holland, and that there had been an omission either to make a deed, or to record it, if made. Now, Phelps knew that if this was so Holland became the equitable owner; that the mortgage bound the equitable interest; and that the holder of the note which the mortgage was given to secure must be claiming a mortgage interest. Our opinion, then, is that Phelps saw enough to put him upon inquiry, and that he was chargeable with knowledge of the outstanding mortgage interest.

The plaintiff claims that the same result should be reached by reason of the character of the deed under which Phelps claims. His position is that the deed is, in effect, a mere quitclaim, and that Phelps stands in no better position than his grantors, who must be regarded as charged with all that the intestate knew. The question raised upon the character of the deed is not quite free from difficulty, and, as it is not necessary to determine it, we omit to do so. Possibly the court below thought that the deed to Phelps operated as a discharge of the mortgage, upon the theory that he had a right to assume that it was made by those who had become owners of the mortgage. The evidence, however, shows that Phelps applied to the grantors for a conveyance to him, upon the theory that they had become the owners of the property, and not incumbrancers, and what he paid he paid simply as a purchaser from the owners. It does not appear to have occurred to any one that there was to be a discharge of the mortgage effected by the deed. Possibly the court below thought that the plaintiff did not appear to be the owner of the note and mortgage. While the note and mortgage were acquired by plaintiff by purchase at a sheriff's sale, the evidence shows 2. TRUSTS: purchase by trustee of trust property: facts not constituting. that he had previously taken them as security. It may be that it was thought that he had taken them in trust, and that he could not acquire title to trust property by a purchase of the same. It is true enough that if a trustee becomes a buyer at his own

sale the beneficiary may, at his option, avoid the sale. But the sale in this case was not the trustee's sale. He had deposited the notes and mortgage in bank, where they were seized upon execution. The sale was made by a judgment creditor, through the sheriff. The plaintiff did not conduct the sale, nor procure it, nor was he charged with any responsibility in regard to it. The sale was made in pursuance of the sheriff's levy, and not in the execution of any trust which the plaintiff had assumed.

We think that the decree must be

REVERSED.