W. C. GOERKE MOTOR COMPANY, Respondent, vs. LONERGAN and another, Appellants.

*December 5, 1940—January 7, 1941.*

546

*Harvey C. Hartwig* and *Chester J. Niebler,* both of Milwaukee, for all appellants, and *Daniel D. Sobel* of Milwaukee, for the appellant Abraham Gecht.

For the respondent there was a brief by *William J. Morgan* and *Berthold L. Berkwich,* both of Milwaukee, and oral argument by *Mr. Morgan.*

MARTIN, J.   On June 30, 1938, defendant Lonergan, lessor, entered into a lease with the plaintiff Motor Company, lessee, of certain premises owned by her and described in said lease as "No. 1425 West Forest Home avenue, to wit, garage with parking lot.   The corner used as a filling station is to be considered separately."   This lease was for a term of two years beginning July 10, 1938.   Rent was $75 a month for the first year and $100 a month for the second year, with the further provision that "if the filling station is also taken over by tenant, the rental shall be as follows: $125 a month for the first year and $150 a month for the second year, this would include garage, filling station and parking lot."

The lease further provided "In case of sale of the above property, the lessee agrees to vacate premises within ninety (90) days from date of notice."   The lease contains the following option clause:

"The said lessee shall have the prior right to purchase if or when any acceptable offer is made to the lessor, Mrs. Lonergan."

While it is claimed that the trial court erred in several respects in its findings of fact, it will serve no useful purpose to enter into a discussion of them, because after a careful examination of all the evidence, we must hold that the findings are sustained.   The first question for consideration is

whether the option to purchase is too uncertain and indefinite to be specifically enforced. In this connection appellants argue that the option clause makes no mention of the premises which the lessee shall have the prior right to purchase; that the purchase price is indefinite and uncertain in that it only refers to "any acceptable offer."

In *Barnhart v. Stern,* 182 Wis. 197, 198, 196 N. W. 245, the plaintiff lessee sued for specific performance of the option to purchase. The option read as follows:

" 'It is further agreed and understood that in case the owner decides to sell the premises at any time, she hereby gives the lessee the first right to purchase the same, and the said lessee is hereby given the option to purchase the said premises for the sum of fifteen thousand ($15,000) dollars at any time during the continuance of this lease.' "

The lessee, during the term of his lease, exercised his option to purchase for $15,000. The lessor refused to recognize lessee's right to purchase and refused to make the conveyance of the premises to him. Lessor contended that the option only gave lessee the right to purchase in the event she decided to sell the premises and that until she so decided, the lessee had no right to purchase the premises under the option. In construing the option, the court said at page 199:

"It is plain that the paragraph was inserted in the lease for the benefit of the lessee, and it must be construed with that purpose in view. It contains two distinct provisions: (1) That the lessee should have the first right to purchase the premises in case the lessor should decide to sell the same; and (2) the lessee was given the option to purchase said premises for the sum of $15,000 at any time during the continuance of the lease. . . . It seems to be plain from the terms of the contract that it was contemplated that the lessor might desire to sell the premises during the term of the lease, in case the lessee should not exercise his option, for a less amount than that named in the option, *in which case the lessee should have the first right to purchase,* and it seems to be equally plain that the lessee had an absolute option to purchase at any time

during the continuance of the lease for the sum of $15,000. *This construction gives effect to each condition in the contract.*"

Specific performance was decreed. It will be noted that in this case the premises were only described as "the premises located at the southwest corner of Forty-Ninth and Galena streets in the city of Milwaukee."

The option is not void because of failure to state a purchase price. The general rule is that an option to the lessee to purchase need not specify the price, it is sufficient if it provides that the price shall be fixed by appraisement, *or by the amount which a third person may offer to pay.* 2 Tiffany, Landlord & Tenant, p. 1675, § 256; James, Option Contracts, p. 81, § 211; *Slaughter v. Mallet L. & C. Co.* (5th Cir.) 141 Fed. 282, 72 C. C. A. 430; *Jones v. Moncrief, Cook Co.* 25 Okla. 856, 108 Pac. 403; *Marske v. Willard,* 169 Ill. 276, 48 N. E. 290; *Harper v. Runner,* 85 Neb. 343, 123 N. W. 313.

Appellants contend that the instant case is governed by the case of *Machesky v. Milwaukee,* 214 Wis. 411, 412, 253 N. W. 169. In that case the plaintiff owner offered to sell to the defendant certain land with buildings thereon. In the offer there was the following clause:

" 'I hereby reserve the right of first option to repurchase the said buildings herein offered at such time as the city of Milwaukee shall dispose of same.' "

Defendants accepted the offer. The land and buildings were conveyed to defendant and plaintiff was paid therefor in accordance with the terms of the offer. The plaintiff did not elect to exercise the option to repurchase until after defendant, without notice to plaintiff, had sold the buildings to another person. Defendant contended that the option was unenforceable because it lacked definiteness and certainty in that it left the price to be fixed by later agreement between the parties. In respect to this contention, the court said:

"It is elementary that 'an offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain.' "

However, at page 413, referring to the indefiniteness as to the price, the court said:

"It neither provides that the price was to be some specified or a reasonable amount, *nor does it provide any manner by which the price is to be ascertained or determined.* At best it is nothing more than an agreement to make a future agreement as to an essential term, which cannot be supplied by implication of law."

In the instant case the manner by which the price was to be determined is definitely fixed. The option states that lessee shall have the prior right to purchase "if or when any acceptable offer is made to the lessor, Mrs. Lonergan." The *Machesky Case, supra,* is authority for the proposition that failure to name a purchase price does not render the contract void for uncertainty and indefiniteness if the option has in it the manner by which the price is to be ascertained or can be determined. We must hold that the option in the instant case is sufficiently definite and certain as to purchase price to be specifically enforceable.

Appellants next contention is, that assuming the enforceability of the option clause, that plaintiff has failed to do that equity which would entitle it to specific performance. What the parties did or failed to do presented issues of fact. The trial court has found in favor of the plaintiff on all issues of fact which we must accept as a verity unless they are against the great weight and clear preponderance of the evidence. We cannot say that the findings of the trial court in any instance is against the great weight and clear preponderance of the evidence.

Appellants further contend that the lease is indefinite in its description of the real estate covered by the option. The

court below found that the real estate at No. 1425 West Forest Home avenue in the city of Milwaukee consisted of lots four, five, and six in block thirteen in Burnham, Rogers and Bechers subdivision number four and was a part of the east half of the northeast quarter of section six in township number six north, range twenty-two east in the Eighth ward of the city of Milwaukee; that it has a frontage of approximately one hundred sixty feet on South Fourteenth street and a frontage of approximately one hundred eighty feet on West Forest Home avenue. At the time the lease was made, there was a filling station located on a part of the premises, all of which carried the same street number, namely, 1425 West Forest Home avenue. This filling station at that time was under lease to another party. As stated in the fore part of the opinion, in describing the premises leased, it is stated in the lease that the corner used as a filling station shall be considered separately. The plaintiff was informed that the corner of the premises occupied by the filling station was on a rental basis from month to month. It was later discovered that the then tenant had a lease of the filling station for a given period. The lessor and lessee finally agreed that if the lessee (plaintiff) took over the filling station, that thereafter the rental would be $125 a month for the first year and $150 a month for the second year, which would include the garage, filling station, and parking lot. A clause to this effect was inserted in the lease. The plaintiff Motor Company never acquired possession of the so-called filling-station premises. However, it is conceded that at and prior to the time the lease was made, the plaintiff had certain negotiations with the lessor to purchase the property at 1425 West Forest Home avenue, that such negotiations, if consummated, contemplated a purchase of all the premises, that is, the garage, parking lot, and filling station.

The purchase option clause states that the lessee shall have the prior right to purchase if or when any acceptable offer is

made to the lessor. On April 4, 1940, defendant lessor entered into negotiations with the defendant Gecht for the sale of all the premises in question, that is, the garage, parking lot, and filling station. The purchase and sale was finally consummated for an agreed consideration of $25,000, defendant Gecht making the purchase on a land contract calling for a down payment of $1,000 and providing for certain monthly payments. In connection with defendant Gecht's knowledge of the plaintiff's rights under its option, the trial court found:

"At the time said contract [the land contract between defendants Lonergan and Gecht] was signed by the defendants, the actual possession and use of the premises by the plaintiff constituted legal and adequate notice to the land-contract vendee, Gecht, of plaintiff's rights as lessee and owner of an option to purchase the property. Aside from constructive notice, the evidence is further convincing and the court finds that the defendant Gecht had actual knowledge of the plaintiff's rights under its option. Defendant Gecht is an experienced businessman, fully able and competent to make any inquiry reasonably required under the circumstances."

Defendant lessor claims that she communicated Gecht's offer to the plaintiff company before closing the sale with Gecht. This was denied by Mr. Goerke who testified that he had no knowledge of the negotiations between Mrs. Lonergan and Mr. Gecht until after the deal had been closed and that he was not advised as to the consideration or terms of the land contract until a discovery examination of the defendant Lonergan was had on June 20, 1940. As to the lessee's option to purchase being sufficiently broad to include the filling station, the trial court found:

"The terms of the entire contract of lease, the surrounding circumstances and the conduct of the parties after the lease was signed clearly establish that it was contemplated by the plaintiff and by the defendant Lonergan that the plaintiff was to have the occupancy of the entire premises consisting of

three lots at 1425 West Forest Home avenue at such time during the life of its lease as the removal of the filling-station tenant occupying the front of the corner lot could be accomplished, and the terms of the option contract contained in the lease agreement, when considered with the other portions of that instrument and in the light of the surrounding circumstances and the practical construction given the entire contract by the acts of the plaintiff and the defendant Lonergan, clearly establish that both parties construed the option contract as relating to the entire premises, particularly after a determination by the lessor Lonergan that any offer for the whole property, rather than some portion thereof, would be acceptable to her."

It will be noted that the sale to defendant Gecht of the entire property was made during the existence of the plaintiff's lease. The plaintiff company had the right to take over the filling-station property at any time during the term of its lease, which expired on July 9, 1940. After lessor had closed the sale to defendant Gecht and under date of April 4, 1940, she wrote the plaintiff lessee merely stating that the property "had been sold" with no indication as to the terms of the sale. As soon as plaintiff learned of the terms and conditions of the land contract made between the lessor and Mr. Gecht, it tendered the sum of $1,000 to the lessor and notified her that it elected to exercise its option to purchase and at that time served notice in writing that it agreed in all respects to comply with all of the terms and conditions as contained in the land contract entered into with Mr. Gecht, and when the case was called for trial in the circuit court on June 24, 1940, plaintiff again tendered the $1,000 as a down payment and offered "to do equity as the court might deem just." Lessor refused the plaintiff's tender of $1,000, whereupon said sum was deposited with the clerk of the court. The court further found:

". . . The plaintiff at the same time, by written offer dated and filed in court on June 24, 1940, 'agreed in all

respects to comply with the terms of the land contract' [contract between Lonergan and Gecht], and also offered 'in all further respects to do and perform such things as plaintiff should in equity perform.' This was a full, complete and unconditional acceptance of the exact price and terms the defendant Lonergan had testified, and still maintains, are acceptable to her, and said tender was promptly made by the plaintiff within a reasonable time after it learned those terms and conditions."

The fact that the lease states "the corner used as a filling station is to be considered separately," which clause is followed by the further provision that "if the filling station is also taken over by tenant, the rental shall be $125 a month for the first year and $150 a month for the second year, this would include garage, filling station and parking lot," gave the plaintiff Motor Company the right, at any time during the life of the lease, to demand possession of the filling-station premises. The plaintiff on April 5, 1940, served the following notice on the lessor:

"Please take notice that we elect, pursuant to our agreement with you to purchase the property known as 1425 West Forest Home avenue, Milwaukee, Wisconsin, consisting of garage with parking lot and filling station, and that we hereby elect to exercise the option granted in our lease of June 30, 1938."

This notice is a clear assertion of plaintiff's right to take over the filling station as well as its right to exercise the option to purchase all of the property. The findings of the trial court are amply sustained by the evidence; they sustain the conclusions of law and the judgment.

*By the Court.*—Judgment affirmed.